UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | Case No. 21-617 (DLF) |
| PHILIP YOUNG | : | |

DEFENDANTS SENTENCING MEMORANDUM.

Philip Young, through his attorney Christopher O'Malley, AFPD for the District of New Jersey, respectfully submits this sentencing memorandum on his behalf toward this Court's consideration of his sentence currently scheduled for January 31, 2023. Counsel advocates a reasonable, but no more than necessary, sentence in this matter to be a 6-month period of house arrest followed by two years of probationary supervision and 200 hours of community service.

PROCEDURAL HISTORY

On July 28, 2021, a sealed complaint was filed against Philip Young. The complaint, supported by affidavit, charged Young with participating in the January 6, 2021 riot and charged him with Assaulting, Resisting or Impeding certain Officers in the Performance of their Official Duties in violation of 18 U.S.C. §111(a)(1) and Obstruction of Law Enforcement During Civil Disorder in violation of 18 U.S.C.§231(a)(3). On August 19, 2021, Young was arrested by warrant signed by U.S. Magistrate Robin M. Meriweather. That day, Young voluntarily gave a taped full confession accepting his responsibility for being at the January 6, riot at the Capitol Building. On August 26, 2021, Young appeared before Judge Merriweather for his initial appearance. There, he was notified of his charges and their penalties, appointed counsel, and given conditions of release.

On October 6, 2021, a grand jury returned an indictment against Young. The indictment adopted the charges in the original complaint and added five additional criminal counts. These are Entering and Remaining in a restricted Building or Grounds in violation of 18 U.S.C. §1752(a)(1), Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. §1752(a)(2), Engaging in Physical Violence in a Restricted or Grounds in violation of 18 U.S.C. §1752(a)(4), Disorderly Conduct in a Capitol Building or Grounds in violation of 40 U.S.C. §5104(e)(2)(D) and lastly Act of Physical Violence in the Capitol Grounds or Building in violation of §5104(e)(2)(F).

On October 26, 2021, Young was arraigned and entered pleas of not guilty to all seven counts as found in the indictment before your Honor. A speedy trial waiver was agreed to by the parties to review the voluminous discovery and engage in settlement negotiations.

On November 22, 2022, Young without a plea agreement plead guilty to the indictment in toto. A presentence report was ordered, and a sentencing date was scheduled for January 31, 2022. On December 28, 2022, the draft report was completed and Mr. Young, through counsel, provided his legal and factual objections to the report on January 11, 2022.

INTRODUCTION

On January 6, 2022, an estimated more than 10,000 people gathered to hear then-President Donald Trump hold his last rally on the National Mall. The theme of the rally was "Stop the Steal", which was a clear reference to interrupting the certification of the presidential election results from November 6, 2020. It is estimated that over 10,000 Americans from all over the country came to hear and see the president. When he concluded speaking, many of these thousands of people went home. However, many thousands decided to take the president's

encouragement and go to the Capitol and protest their discontent with the election results and their legitimacy. As we now know, many of these protesters were intent on rioting and obstructing the election process through violent, destructive, and illegal means. Many came with weapons, plans, and agendas to cause utter chaos in organized numbers.

Philip Young went to Washington to see Donald Trump one last time as president. He accepted the election results and its process. He respected then, as he does now the many court decisions which dismissed the many electoral challenges around the country. When he came to Washington on the morning of January 6, 2021, he never anticipated that he would be on the East Steps of the Capitol pushing against bicycle barricades manned by Capitol Police.

Young got swept away by the mob, and with it, so too did most of his better judgment and character. He is mortified by his behavior and terribly regrets his conduct. He continues to be contrite and understands his conduct will come with criminal sanctions. It is the Defense counsel's position that his conduct under 18 U.S.C. §111(a)(1) is analogous with U.S.S.G. 2A2.4 and not the 2A2.2 guideline chosen by the probation department and advocated by the government.

Because his assaultive behavior is clearly distinguishable against those others who were found guilty of this statute, it is respectfully requested Mr. Young be sentenced to six months of house arrest followed by two years of supervision.

BACKGROUND

Philip Young is a lifelong resident of Southern New Jersey. He is a high school graduate who has been married for 30 years and currently lives with his wife Connie and their son River. He is a trained boilermaker like his father, and after 30-plus years in this trade, he is now retired.

He has loved the outdoors all his and has remained apolitical until the 2016 presidential season began. In Donald Trump, he found a novel fresh voice who he appreciated for his ability to speak to him where other politicians before him did not. Mr. Young had attended Trump rallies before January 6, 2021. When he learned that there would be one last one in Washington on January 6, 2021, Mr. Young wanted to be a part of the energy one last time before it all changed on January 20, 2020. What Young did not anticipate is the energy kept him in Washington and had him follow the thousands of others to the Capitol. Mr. Young has no explanation for it all, but he found himself on the Capitol East Steps. At first, there were very few people, but in a short while the crowd thickened and became more confrontational with the Capitol Police. As the crowd increased so did the tension. The tension broke when the crowd charged the bicycle rack barricades and the Capitol Police who were holding them back. The mob tried to force themselves upon the Capitol Police, break the barricade, and pour onto the Capitol. Phil Young joined the mob, charged the barricade, and pushed himself to the margins of the barricade. However, his conduct was not to initiate the breach, but he rather followed it. And unlike many at the front of the barricades, Mr. Young never struck, touched, or used the barricade as a weapon against the police at any time. He pushed against the barricades, not unlike others who pushed against the doors of the Capitol being held back by the Capitol Police. When he met the barrier, he pushed himself into a corner, trapped between the barricade and the Capitol stairs stone pedestal. The police surrounded him and told him to stop, he immediately submitted to their authority and stopped. They directed him to return to the steps. Young did as he was told and jumped upon the marble pedestal and returned to the stairs.

ARGUMENT

PHILLIP YOUNG'S 18 U.S.C. §111(a)(1) ASSAULTIVE CONDUCT WAS NOT AGGRAVATED ASSAULT UNDER U.S.S.G.§2A2.2, BUT RATHER OBSTRUCTIVE CONDUCT AS DEFINED UNDER U.S.S.G.§ 2A2.4

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007). "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark" for determining a defendant's sentence. Id. at 49. The United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions" and are the "starting point and the initial benchmark" for sentencing. Id. at 49.

According to the PSR, the U.S. Probation Office calculated Young's adjusted offense level under the Sentencing Guidelines as follows:

| | | |
|---|---|---|
| U.S.S.G. §2A2.2 | Base Offense | [14] |
| U.S.S.G. §2A2.2(b)(2)(B) | Use of a Dangerous Weapon | [4] |
| U.S.S.G. §3A1.2(a)(1) | Official Victim | [6] |
| U.S.S.G. §3E1.1(a) | Acceptance of Responsibility | - [2][1] |
| | Total | [22] |

---

[1] The PSR did not award Mr. Young the additional point for acceptance under U.S.S.G.§3E1.1(b). It is assumed this point was withheld because Mr. Young plead open to the indictment without a plea agreement and because this point is at the discretion of the government for those defendants whose offense level is 16 or greater and upon motion of the government stating the defendant has assisted authorities in the investigation or prosecution of his own misconduct by tile notifying authorities of his intention enter a plea of guilty. It is Mr. Young's position that he has consistently expressed his intent to plea to the government since the outset of this case.

Counsel on behalf of the defendant sees Mr. Young's assaultive conduct as distinguishable from other January 6, 2021, rioters similarly charged with 18 U.S.C. § 111(a)(1) and respectfully contends his appropriate score under Sentencing Guidelines as follows:

| | | |
|---|---|---|
| U.S.S.G §2A2.4 | Base Offense | [10] |
| U.S.S.G. §2A2.4(b)(1) | physical contact | [3] |
| U.S.S.G. 3E1.1(a) | Acceptance of Responsibility | - [2] |
| | Total | [11] |

The probation department wrongly characterizes Mr. Young's 18 U.S.C.S. § 111 offense conduct as aggravated assault under U.S.S.G. §2A2.2 rather than Obstructing or Impeding Officers found under U.S.S.G.§2A2.4 of the Federal Sentencing Guidelines. Of the seven statutes Mr. Young admitted to, only 18 U.S.C.S. § 111(a)(1) is provided a guideline by the Sentencing Commission. In fact, the Commission promulgated two distinct guidelines to apply depending on the offense conduct of the defendant. Counsel respectfully is requesting the Court to make a fact-bound inquiry to determine which of these two guidelines best characterizes Mr. Young's conduct.

The difference between §2A2.2 and § 2A2.4 is that §2A2.2 requires the element of aggravated assault while §2A2.4 concerns obstructing or impeding. Obstructing or impeding under 2A2.4 is when (1) the offense involved physical contact, or a dangerous weapon was possessed, and its use was threatened (2) and if the victim sustained bodily injury. There is a cross-reference in part of §2A2.4 (c) that states if the conduct constituted aggravated assault, §2A2.2 should apply. The Sentencing Commission defines aggravated assault to mean a felonious assault that involves (1) a dangerous weapon with the intent to cause bodily injury with

that weapon; (2) serious bodily injury; (3) strangling, suffocating, or attempting to strangle or suffocate; or (3) an intent to commit another felony. *See* U.S.S.G.§ 2A2.2 definition 1.

Courts follow Federal Sentencing Guidelines section §1B1.2(a) to determine which assault definition should apply. §1B1.2(a) instructs courts to choose the offense guideline section that is most applicable to the offense of conviction. Under the guidelines nine-step calculation process, U.S.S.G. § 1B1.1, the first step is to locate the offense of conviction in the Statutory Index. *Watterson v. United States*, 219 F.3d 232, 235 (3d Cir.2000). For the offense of conviction here, 18 U.S.C. § 111, the Statutory Index refers to both § 2A2.2 and § 2A2.4. "When a particular statute proscribes a variety of conduct that might constitute the subject of different offense guidelines, the court will determine which guideline section applies based upon the nature of the offense charged in the count of which the defendant was convicted." U.S.S.G. § 1B1.2, app. n. 1.

## FACTUAL EVIDENCE OF PHILIP YOUNG'S CONDUCT

In this case, there is no evidence supporting U.S.S.G.§ 2A2.2 over 2A2.4. Philip Young's conduct is captured by several body cameras worn by Capitol Police. At 2:38 p.m. on January 6, 2021[2], he appears a few steps below the bicycle rack temporary barricades. He is at first accompanied by less than a dozen protestors. As the footage captures, Capitol Police are on one side of the barricade and protestors are on the other. The protesters are not acting concertedly, and Mr. Young appears quite alone and apart from the others. By 2:40 p.m., the crowd continues to increase, and many get closer and closer to the barricades manned by the Capitol Police. By 2:42 p.m., several protesters are shouting various political jeremiads about the state of America.

---

[2] Counsel has provided the Court a digitally recorded compilation derived from the body cameras worn by the Capitol Police. This rendition attempts to fully capture the offense conduct of Mr. Young's criminal activity on January 6, 2021.

Mr. Young remains—as he had—against the pedestal several steps below the bicycle barricade. At 2:46 p.m., the crowd continues to fill the once-empty steps and Mr. Young's physical position remains unchanged. At 2:46:35 p.m., a protester with a megaphone shouted to the others "one foot, one foot," urging the crowd forward. At this moment Young is looking at the horizon with his back to the crowd.  It is at this moment the crowd at the front of the barricades charges the line of police officers on the other side.  At 2:46:44 p.m., Young ascends the steps and begins pushing against the police barricade and by extension the police officers holding the line. As Young pushes, he hugs the pedestal wall and finds himself trapped by the officers and the pedestal.  He immediately quits pushing against the barricades and reassures the police that he quit by stating "Didn't I stop didn't I stop?" He cowers to their authority, gives a palms-up shrugged shoulder gesture, and follows their physical directive to go back where he came from. Young complies with this command and returns to where he was seconds before.

By 2:47:40 pm, the barricade is reassembled, and the protestors return to the other side of the barricades as they were a moment before.   At 2:48:14 pm, Young appears to have been affected by some noxious spray in the face.  Young remains at the steps before the second foray between the protesters and the Capitol Police.  At 3:19:20 pm, a protester receives a spray in the face which causes him to retaliate against the police and he directly punches a police officer. Young is seen reaching forward and grabbing the low end of a spindle of the bicycle rack for a second; he let it go and leaves the steps and is no longer at the scene.

At no point did Young strike an officer.  At no point did Young use the bicycle rack as a weapon with intent to cause bodily injury.  At no point was he trying to commit another felony. Moreover, no officers who encountered Mr. Young were injured by his conduct.  At no point did

Young ever verbally threaten any law official. What Young did do is consistent with obstructing and impeding officers as found in U.S.S.G. 2A2.4.

## ALL PHYSICAL CONTACT WITH POLICE IS NOT ALWAYS
## §2A2.2 AGGRAVATED ASSAULT

The distinction between the two guidelines in the January 6 cases was before this Court in *United States v. Kevin Douglass Creek* Case No. 21-645 (DLF). In *Creek,* the PSR recommended U.S.S.G. 2A2.4, which was counter to the U.S.S.G. §2A2.2 guidelines and what the parties agreed to in the plea agreement. In that case, the defendant Kevin Creek forcibly grabbed, shoved, and punched an officer in his face shield, and later shoved and kicked another officer in his attempt to get in the Capitol. He is also seen throwing a weapon at officers. In that case, the government's brief argues for the aggravated assault guideline with facts that are not shared by Mr. Young's conduct.

Additionally, it is anticipated the government will argue that Mr. Young fits into the 2A2.2 guideline because he had the intent to commit another felony. In this case, the other felony is Count two Obstruction of Law Enforcement During Civil Disorder in violation of 18 U.S.C.§231(a)(3). It is Young's position that the offense of conviction could not be the "other felony" contemplated by §2A2.2. This "other crime" trigger was addressed in *United States v. Calhoun* 434 Fed. Appx 311(2011) and is the defense's position in this matter "because the offense of conviction led to the cross-reference in the first place, therefore the other felony must be separate from the offense of conviction." This "other felony" is an overly broad reading giving preference to §2A2.2 over §2A2.4.

Some physical contact with police can be less than aggravated assault. Courts have made this distinction between the two guidelines. In addition to possessing a weapon and a verbal threat, §2A2.4 must also cover some form of physical contact that is less than a forcible assault,

otherwise, the enhancement for physical conduct would be a nullity. "In our view, although there is some overlap between §2A2.2 and §2A2.4, the logical conclusion is that § 2A2.4 is meant to apply to possession of weapons and verbal threats, while § 2A2.2 is meant to apply to something more." *United States v. Hooker*, 997 F.2d 67, 75 (5th Cir.1993) Mr. Young's conduct does not fit into the something more.

Minor injuries are not considered aggravated assault. In *United States v. Mejia-Canales*, 467 F.3d 1280 (10th Cir. 2006)., an inmate hit a guard in the head causing a minor head injury and a small oral cut. The injuries consisted of a red mark with no report of swelling. The court found that due to no additional evidence supporting those serious bodily injuries took place that the sentencing enhancement under 2A2.2 should not be applied to the inmate's sentence.

Holding actual control over someone with a dangerous weapon may be considered aggravated assault. In *Hooker*, a DEA agent was held at gunpoint while two aggressors contemplated killing him. The aggressors had the DEA agent on his knees and held the gun to his head. The aggressors also kicked the DEA agent twice. The court found that the aggressors did more than possess weapons and verbal threats, and that kicking the DEA agent and threatening to kill him was aggravated assault.

Verbal threats of violence coupled with physical violence may constitute aggravated assault. In *United States v. Thomas*, 669 F.3d 421, an inmate blocked the entrance to a prison cell that a guard occupied and threatened to kill the guard. This resulted in the inmate punching the guard in the face several times. The court found that evidence concerning the guard's injuries and the inmate's conduct constituted aggravated assault.

Using a dangerous weapon, merely to frighten does not qualify as aggravated assault. In *United States v. Luscier*, 983 F.2d 1507, after killing his aunt, threatened to kill other family

members if they didn't comply with demands with a sharpening steel and stabbed the steel through a door that was being held shut. The court found that committing assault with a dangerous weapon is not, in itself, a justification to classify an assault as aggravated. Id. 1512. Advancing towards another with a dangerous weapon without making verbal threats of violence does not qualify as aggravated assault. In *United States v. Shumpert Hood*, 210 F.3d 660 (6TH Cir. 2000), a woman approached two postal inspectors while holding a steak knife in a manner that prompted a postal inspector to draw his pistol out of fear. The court found that this did not amount to aggravated assault due to the lack of evidence showing that the woman intended to cause bodily harm or commit another felony. Id. 664. See Also *United States v. Rendsland*, 648 Fed. Appx. 104. (Holding that pointing a pistol at a Secret Service Officer in itself is not aggravated assault).

Striking another in the mouth, which results in the loss of momentary consciousness is simple assault. In *United States v. Jennings*, 991 F.2d 725, an inmate in federal custody struck an officer in the mouth, which caused a momentary loss of consciousness. The result of the injury was abrasions and cuts in which the officer was treated at a hospital and released immediately afterward.

2A2.4 is the correct guideline where no intent to cause bodily injury exists, no injury occurred, and no dangerous weapon was employed. Mr. Young's assault charge is based upon the fact that he participated in a group effort with at least several other individuals that consisted of pushing a fence/barricade up against a cordon of police. However, many within this group behaved very differently and distinctly from one another.  Mr. Young participated in this conduct for less than a minute in which he gave up and was momentarily pinned against a wall and the bicycle barricades. Prior to this ordeal, he did not threaten the lives of any police officers and the

only identifiable weapon was the fence/barricade that he did not have sole control over. Mr. Young did not use the fence/barricade to hold any officers under actual control and did not use it in any way that resembles a weapon. Certainly, a bicycle rack barricade can be used as a weapon. Had Mr. Young used it to strike, squeeze, or used it like an anvil to physically injure a Capitol Officer against its structure, then §2A2.2 would be correctly used.  In this case, Mr. Young never used the barricades in any such manner.

## 18 U.S.C. §3553(a) CONSIDERATIONS

Mr. Young, despite having good relations with the government throughout this case, was unable to secure a negotiated plea agreement. This issue of preserving his right to have this Court settle the appropriate guideline argued above could only be done by pleading to the full indictment without an agreement.   At no point since his arrest has Mr. Young not accepted responsibility for his actions and conduct.

As this Court is aware, the procedural requirements of post-Booker sentencing are well-established.  Briefly, sentencing courts must (1) properly calculate the Guidelines range; (2) rule on any departure motions made under the Guidelines; and (3) exercise post-Booker discretion by choosing a sentence in light of all relevant sentencing factors under 18 U.S.C. § 3553(a), "regardless [of] whether [the chosen sentence] varies from the sentence calculated under the Guidelines." *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006).  The court's final determination on a sentence must reflect "§ 3553(a)'s overreaching instruction to 'impose a sentence sufficient, but not greater than necessary' to accomplish the sentencing goals advanced in § 3553(a)(2)." *Kimbrough v. United States*, 552 U.S. 85, 110 (2007). Those purposes can best be summarized as punishment, deterrence, incapacitation, and rehabilitation.

The "sufficient, but not greater than necessary" requirement is often referred to as the "parsimony provision." The parsimony provision is not simply another factor to be considered along with the others set forth in § 3553(a); it actually imposes a separate and independent limit on the sentence a court may impose. See *United States v. Denardi*, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J., concurring in part, dissenting in part) (since § 3553(a) requires the sentence to be no greater than necessary to meet four purposes of sentencing, imposition of a sentence greater than necessary to meet those purposes is reversible, even if within the guideline range). Thus, under § 3553(a), courts are required to impose a sentence below the guideline range if such a sentence would be sufficient to achieve the purposes of sentencing.

In this case, the PSR advisory guidelines call for an offense conduct score of 22 points. This is 5 more points than parties anticipated in their plea negotiations. It clearly is more than warranted toward achieving a "just sufficient no more than necessary sentence." Mr. Young clearly understands that his conduct was reprehensible; that he should have left after, then-President Trump concluded his speech; that being associated with this mob will forever challenge his sense of being an upright citizen and will also compromise his standing in the community.

The many letters (exhibit A) from people who know him best, describe Phil Young as a man who gives of himself to those who need help. They also give substance to the diversity and uniqueness of those who participated in the January 6 riots. The letters challenge the archetype of those who participated in this awful day. Young is described as gentle and non-violent. A man who gives selflessly and his only benefit is knowing he helped another who needed it. As described above, Phil Young, but for the tenure of the 45th president, has been apolitical. He has returned to that status. Phil does not belong to any social media platforms. He has complied

fully with pretrial supervision. He is described by his friends as contrite and regretful of his activity.  He is described as one who infinitely respects police authority, and the necessity and value police bring to our society.  He chauvinistically is an American and wants the best for her in all her trials.  After 911, he drove to New York and volunteered to help clear the debris of twisted steel and rubble with his welding skills as a boilermaker. During this time when the country was reeling from this attack, Phil Young manufactured a flag holder on a prominent highway overpass to better lift the spirits of his community by showing the flag was still there and continues to wave. He maintains that flag daily.  Phil Young is an avid outdoorsman and is devoted to visiting our national parks, particularly by camping and hiking within them.

Phil Young continues to question himself and his recklessness and conduct on January 6, 2021. He continues to be mystified by his conduct. Nonetheless, he accepts punishment and sanctions this Court deems reasonable and necessary.  It is this reasoned resignation that should give this Court assurance that the need to deter, incapacitate and rehabilitate is not as pressing as they are with other January 6 defendants.

Nonetheless, punishment remains.  Research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, Purposes and Functions of Sentencing, Crime & Just. 1, 28 (2006). "Three National Academy of Science panels . . . reached that conclusion, as has every major survey of the evidence." Id.; see also Zvi D. Gabbay, Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White-Collar Crime, Cardozo J. Conflict Resol. 421, 447-48 (2007) ("[C]ertainty of punishment is empirically known to be a far better deterrent than its severity."). Finally, the need for rehabilitation cannot be met by jailing Mr. Young more than necessary.  "Imprisonment is

not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a). Accordingly, these factors weigh heavily in favor of a sentence far below the advisory guideline range.

Sentencing parity between similarly situated co-defendants should be taken into account in setting the appropriate sentence. As stated above, Mr. Young participated in activity consistent with §2A2.4. This would come with an advisory sentencing range of 8-14 months in offense conduct range B. Many defendants arrested and prosecuted on January 6, have been found guilty of 18 U.S.C 111(a)(1) assaultive conduct. Mr. Young's conduct that day is clearly distinguishable and lesser in degree to all others who have received sentences thus far. Defendants such as:

Scott Fairlamb 21-120 (RCL) struck an officer and carried a weapon – 44, months,

Devlyn Thomspson, 21-461 461 (RCL) striking officers with weapons and forcibly taking riot shield - 46 months,

Nicholas Languerand, 21-353(JDB) assaulted an officer by throwing objects at them – 44 months,

Mark Leffingwell, 21-005 (ABJ) punching two officers while inside Capitol Building – 6 months,

Kevin Creek 21-645 (DLF) grabbing, striking, and kicking officers – 27 months,

Greg Rubenacker 21-193 (BAH) chasing an officer with the mob up and down Capitol steps, threw water bottle at an officer, and posted outrageous behavior of events on social media – 41 months, Cody Mattice and James Mault 21-657 (BAH) spraying chemical irritant at police – 44 months, Rickey Willden 21 -0050(RC) Sprayed can of chemical irritant at police and threw can at police – 24 months,

Howard Richardson, 21-721 (CKK) Beat officer with a flagpole – 46 months,

Charles Bradford Smith 21767(RCL) carried a club in the Capitol, verbally threatened and stormed barricade against officers – 41 months

Alan Byerly 21-527 (RDM) possessing and threatening officer with a taser gun and striking officer physically – 34 months,

Troy Sargent striking officer with open hand posting about it on social media – 14 months.

All the rioters' offense conduct on January 6, 2021, is all distinguishably worse than the conduct of Mr. Young.  Additionally, many belonged to subversive groups, came with an intent to cause trouble, carried real weapons, and posted and crowed about this reprehensible behavior on social media shortly after it happened.

It is understood, certainly, that every defendant is distinguishable from the other however, Mr. Young never came to make trouble, never physically touched an officer, never made threats against them, never intended to hurt anyone, and has been unabatedly contrite, and remorseful about his behavior.  Avoiding sentencing disparity is warranted in this case and these similarly situated co-defendants. *See, United States v. Parker*, 462 F.3d 273, 277-278 (3d. Cir. 2006)   Although §3553(a) does not require district courts to consider sentencing disparity among co-defendants, it also does not prohibit them from doing so. So long as factors considered by the sentencing court are not inconsistent with those listed in § 3553(a) and are logically applied to the defendant's circumstances, we afford deference to the court's "broad discretion in imposing a sentence within a statutory range." 278 *Booker*, 543 U.S. at 233, 125 S.Ct. 738; accord *Cooper*, 437 F.3d at 330 (quoting *United States v. Williams*, 425 F.3d 478, 481 (7th Cir.2005)). Section 3553(a) both "sets forth numerous factors that guide sentencing" and "guide[s] appellate courts ... in determining whether a sentence is unreasonable." Booker, 543

U.S. at 261, 125 S.Ct. 738. Where appropriate to the circumstances of a given case, a sentencing court may reasonably consider sentencing disparity of co-defendants in its application of those factors. See *Koon v. United States*, 518 U.S. 81, 109, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (noting pre-*Booker* that unless the Guidelines explicitly prohibit downward departure on a particular ground, the sentencing court must determine whether the facts of the case warrant departure on that ground); see also *Menyweather*, 447 F.3d at 633.

Mr. Young rejected a plea offer that placed him in a 17-point offense conduct score with criminal history category I with a guideline advisory range of 24-30 months custody. Counsel is not requesting the Court rectify a rejected plea or hold the government to a position that Mr. Young freely rejected. However, this fact is instructional in how the probation department is beyond the pale when it is advocating for the bicycle cordon used by Mr. Young as a dangerous weapon. Mr. Young continues to be responsible for committing assault upon the officers but maintains his crime is analogous to §2K2.4 and not aggravated assault found in §2A2.2. Pleading open was the only way he could present this schism before the Court.

## CONCLUSION

For the reasons stated above Philip Young respectfully requests that the Court impose 6 months of house arrest to be followed by 24 months of probation and to complete 200 hours of community service.

Respectfully submitted,

__/s/ *Christopher O'Malley*___

CHRISTOPHER O'MALLEY
Assistant Federal Public Defender

800 Cooper Street. Suite 350  
Camden New Jersey 08102  
christopher_o'malley@fd.org  
(856) 757-5341